## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |  |
|---|---|---|
| AGIS SOFTWARE DEVELOPMENT LLC, | § | Case No. |
|  | § |  |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
|  | § |  |
| v. | § |  |
|  | § |  |
| SAFETIX LTD., | § |  |
|  | § |  |
| Defendant. | § |  |
|  | § |  |
|  | § |  |
|  | § |  |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AGIS Software Development LLC ("AGIS Software" or "Plaintiff") files this Complaint against Defendant Safetix Ltd. ("Safetix" or "Defendant") for patent infringement under 35 U.S.C. § 271 and alleges as follows:

## THE PARTIES

1.      Plaintiff AGIS Software is a limited liability company, organized and existing under the laws of the State of Texas, and maintains its principal place of business at 100 W. Houston Street, Marshall, Texas 75670. AGIS Software is the owner of all right, title, and interest in and to U.S. Patent Nos. 9,445,251, 9,467,838, 9,820,123, and 9,749,829 (the "Patents-in-Suit").

2.      Defendant Safetix is a Cyprus company with an office at Parnithos, 9 Flat/Office A, Germasogeia, 4040, Limassol, Cyprus. On information and belief, Defendant may be served with process through the Hague Convention.

3.      On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers for sale, and/or sells infringing products and services in

the United States, including in the Eastern District of Texas, and otherwise directs infringing activities to this District in connection with its products and services.

## JURISDICTION

4.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367.

5.     This Court has specific and personal jurisdiction over Defendant in this action because Defendant has committed acts within this Judicial District giving rise to this action and has established minimum contacts with this forum, such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this Judicial District and/or has contributed to patent infringement by others in this Judicial District, the State of Texas, and elsewhere in the United States by, among other things, offering to sell and selling products and/or services that infringe the Patents-in-Suit. Defendant has purposefully and voluntarily availed itself of the privileges of conducting business in the United States, the State of Texas, and this District by continuously and systematically placing goods into the stream of commerce through an established distribution channel with the expectation that they will be purchased by consumers in this District. Defendant, directly and/or through intermediaries (including distributors, sales agents, and others) ships, distributes, sells, offers to sell, imports, advertises, makes, and/or uses its products (including, but not limited to, the products accused of infringement here) in the United States, the State of Texas, and this District. Defendant is subject to this Court's jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to its substantial business in this State and Judicial District, including

(a) at least part of its past infringing activities, (b) regularly doing or soliciting business in Texas, and/or (c) engaging in persistent conduct and/or deriving substantial revenue from goods and services provided to customers in Texas.

6.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because, among other things, Defendant is not resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). Defendant, through its own acts and/or through the acts of others, makes, uses, sells, distributes, exports from, imports, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with this Judicial District, such that this venue is a fair and reasonable one.

## PATENTS-IN-SUIT

7.    On September 13, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,445,251 (the "'251 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks." On June 8, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate of the '251 Patent determining Claims 1-35 to be valid and patentable. A true and correct copy of the '251 Patent, which includes the June 8, 2021 Ex Parte Reexamination Certificate, is provided for download at the following publicly-available                                                                 resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/944525 1.

8.    On October 11, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,467,838 (the "'838 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks." On May 27, 2021, the United States Patent

and Trademark Office issued an Ex Parte Reexamination Certificate of the '838 Patent determining Claims 1-84 to be valid and patentable.  A true and correct copy of the '838 Patent, which includes the May 27, 2021 Ex Parte Reexamination Certificate, is provided for download at the following publicly-available                                                                                         resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9467838.

9.      On November 14, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,820,123 (the "'123 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks."  On September 24, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate for the '123 Patent confirming the validity and patentability of Claims 1-48.  true and correct copy of the '123 Patent, which includes the September 24, 2021 Ex Parte Reexamination Certificate, is provided for download     at     the     following     publicly-available     resource: https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9820123.

10.     On August 29, 2017, the United States and Trademark Office duly and legally issued U.S. Patent No. 9,749,829 (the "'829 Patent") entitled "Method to Provide Ad Hoc and Password Protected Digital and Voice Networks." On August 16, 2021, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate for the '829 Patent confirming the validity and patentability of Claims 1-68. A true and correct copy of the '829 Patent, which includes the August 16, 2021 Ex Parte Reexamination Certificate, is provided for download at the following                                      publicly-available                                      resource:

https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9749829.

11.    AGIS Software is the sole and exclusive owner of all right, title, and interest in the Patents-in-Suit, and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including the filing of this patent infringement lawsuit. AGIS Software also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

## FACTUAL ALLEGATIONS

12.    Malcolm K. "Cap" Beyer, Jr., a graduate of the United States Naval Academy and a former U.S. Marine, is the CEO of AGIS Software and a named inventor of the AGIS Software patent portfolio. Mr. Beyer founded Advanced Ground Information Systems, Inc. ("AGIS, Inc.") shortly after the September 11, 2001 terrorist attacks because he believed that many first responder and civilian lives could have been saved through the implementation of a better communication system. He envisioned and developed a new communication system that would use integrated software and hardware components on mobile devices to give users situational awareness superior to systems provided by conventional military and first responder radio systems.

13.    AGIS, Inc. developed prototypes that matured into its LifeRing system. LifeRing provides first responders, law enforcement, and military personnel with what is essentially a tactical operations center built into hand-held mobile devices. Using GPS-based location technology and existing or special-purpose cellular communication networks, LifeRing users can exchange location, heading, speed, and other information with other members of a group, view each other's locations on maps and satellite images, and rapidly communicate and coordinate their efforts.

14.    AGIS Software was formed in 2017 and maintains two offices located in the State of Texas, at 100 W. Houston Street, Marshall, Texas 75670 and at 2226 Washington Avenue, #2, Waco, Texas 76702. AGIS Software also maintains a data center in Marshall, Texas.

15.    Mr. Beyer has maintained longstanding ties to Texas and the Eastern District. In 1987, Mr. Beyer founded Advanced Programming Concepts, an Austin-based company focused on real-time tactical command and control systems. Advanced Programming Concepts was later acquired by Ultra Electronics, Inc. and is now the Advanced Tactical Systems unit of Ultra Electronics, Inc., which is still based in Austin, Texas.

16.    AGIS Software licenses its patent portfolio, including the Patents-in-Suit, to AGIS, Inc. AGIS, Inc. has marked its products accordingly. AGIS Software and all previous assignees of the Patents-in-Suit have complied with the requirements of 35 U.S.C. § 287(a). On information and belief, Defendant has known about and has been on notice of its infringement of AGIS Software's patents, including the Patents-in-Suit, since at least the issuance date of the Patents-in-Suit.

17.    Defendant has infringed and continues to infringe the Patents-in-Suit by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States applications, products, and/or services that infringe the Patents-in-Suit. Such applications, products, and/or services include at least any and all variations and versions of Familo mobile applications, desktop/laptop software applications, web applications, mobile devices, terminals, and related servers and services, and any implementation of location sharing applications, products, and/or services (collectively, the "Accused Products").

18.    The Accused Products include functionalities to form and/or join networks or groups. The Accused Products include functionalities to display map information, including

symbols corresponding with users, entities, and locations. The Accused Products include functionalities to share and view locations with other devices and/or users. The Accused Products include functionalities to display symbols corresponding to locations (including locations of other devices and/or users) on a map. The Accused Products include functionalities to communicate with other devices and/or users via text, voice, and/or multimedia-based communication. The Accused Products comprise the above and following functionalities, based on the identified publicly-available resources, which directly map to the below-identified claims of the Patents-in-Suit.



https://play.google.com/store/apps/details?id=net.familo.android&hl=en_US

7





https://apps.apple.com/us/app/familo-find-my-phone-tracker/id638696816



**Familo: Find My Phone Locator**

About this app

Put your family's safety first with Familo - the simple and secure way to stay connected.

Familo helps family members stay informed and coordinate more easily throughout the day. With clear consent and full transparency, it's designed for peace of mind - helping families feel closer and more supported, even when apart.

Familo offers following features:

- View approved family members' real-time location on a private family map
- Get notified when family members arrive or leave with a predefined places (like home or school)
- Use the SOS button for emergency location sharing
- Chat privately with your family inside the app - stay connected anytime
- Let family members know you're okay with a quick check-in at your current location
- Location sharing is always opt-in - each family member controls their visibility
- Each family member decides who can see their location

🔒 Important privacy notice:

- Familo requires explicit consent from all users before sharing location.
- Location is only shared within your private family circle after consent is given.
- Without this consent, location data is not visible.

Getting Started with Familo GPS Locator:

- Download and set up: Simply install the app and provide the essential permissions, like location access, for full functionality.
- Form your private circle: Establish or join a secure family group. Membership is exclusive to those you invite and who explicitly agree to join.
- Send out invitations: Easily invite family members using their phone number, a unique link, or a QR code.

https://play.google.com/store/apps/details?id=net.familo.android&hl=en_US

 **Familo: Find My Phone Locator**
About this app                                                    ✕

access, for full functionality.
- Form your private circle: Establish or join a secure family group. Membership is exclusive to those you invite and who explicitly agree to join.
- Send out invitations: Easily invite family members using their phone number, a unique link, or a QR code.
- Consent is crucial: For location sharing to begin, every invited family member must consciously accept the invitation and grant all required permissions, including location services, on their device.
- Stay informed: We ensure all family members receive clear notifications explaining the app's purpose, who invited them, and how their location information will be utilized within the group.
- Your control, always: Familo functions solely with the active agreement of each family member to share their location. If consent is withheld, location sharing for that member will remain inactive.

Familo works only with the following permissions to provide full functionality:

- Location access: for real-time sharing, geofencing, and SOS alerts
- Notifications: to inform you about check-ins or safety alerts
- Contacts: to invite trusted family members
- Photos and Camera: to personalize profiles with pictures

Familo is committed to privacy, transparency, and responsible use.

We'd love your feedback! Share your ideas with us at support@familo.net

Terms of Use: https://terms.familo.net/en/Terms_and_Conditions_Familonet.pdf
Privacy Policy: https://terms.familo.net/privacy

https://play.google.com/store/apps/details?id=net.familo.android&hl=en_US



## Familo: Find My Phone Locator

About this app

Terms of Use: https://terms.familo.net/en/Terms_and_Conditions_Familonet.pdf
Privacy Policy: https://terms.familo.net/privacy

| | |
|---|---|
| **Version** | **Updated on** |
| 2.106.1 | Aug 19, 2025 |
| **Requires Android** | **Downloads** |
| 5.0 and up | 10,000,000+ downloads |
| **In-app purchases** | **Content rating** |
| $2.99 - $89.99 per item | Teen Learn more |
| **Permissions** | **Interactive elements** |
| View details | Users Interact, Shares Location, In-App Purchases |
| **Released on** | **Offered by** |
| Sep 18, 2013 | SAFETIX LTD |

https://play.google.com/store/apps/details?id=net.familo.android&hl=en_US









## Communication

Where are you? How are you?
What are you doing? Find out
about family members and
friends with just one touch. The "I
arrived safely" message is a thing
of the past.

## Freedom

It's easy to stay in contact with all
important people in your life, and
you decide when you want to
share your location and with
whom.

## Safety

Alert other group members and
send them your current location
if you need help.

https://www.familo.net/en/



### The App

**REAL-TIME LOCATION**
Share your location continuously with family and friends and locate them with just one touch

**INTELLIGENT PLACES**
Automatic notifications when other group members reach or leave predefined places like school, the cafeteria or home

**CHAT**
Stay connected with all important people in your life via chat even when the localization function is switched off!

**PANIC BUTTON**
Just in case: Send an alert including your current location to your contacts

#### Stefanie H. (45)

„The app makes my daily life so much easier. With Familonet I automatically see when my kids arrived safely at school or at their grandparents. I am reassured without having to call them all the time."

#### Hanna M. (21)

„I use Familonet with my roommates and we love it! Now I always know who is at home or waiting in the cafeteria, or who is on the way and can pick up something to eat when the frigde is empty."

#### Thomas S. (37)

„FAMILO ist great! I like that you can always decide if you want to share your location permanently, or only when you arrive at a certain place, or just switch the localization function off."

https://www.familo.net/en/



https://www.familo.net/en/



https://www.famiilo.net/en/

To continually improve FamiloApp's features and user experience, we rely on a variety of third-party services, analytics, location, mapping, cloud storage, and more. These services help enhance app performance and user engagement. We ensure all third-party providers adhere to strict data protection agreements regarding the access, storage, and processing of your data. Additionally, we implement technical safeguards, including TLS/SSL encryption, to protect your data during transfers and ensure its confidentiality and integrity.

We may engage the following third-party service providers in order to provide us with necessary infrastructure for delivery and improvement of our services:

| Entity name | Services performed | Entity location | Link to Privacy Policy |
|---|---|---|---|
| Facebook | Analytics / ad management service provider | USA | Privacy Policy |
| Appsflyer | Deeplinking, analytics services, events tracking provider | USA | Privacy Policy |
| Amplitude | Product analytics, events tracking | USA | Privacy Policy |
| Google (Google Analytics, Google Maps) | Analytics service provider, Maps integration | USA | Privacy Policy |
| Firebase Crashlytics (Google LLC) | User authentication, analytics, marketing service provider | USA | Privacy Policy, Firebase Policy |
| Braintree (for Web Users) | Payment processing | USA | Privacy Policy |
| Stripe (for Web Users) | Payment processing and financial infrastructure services | USA | Privacy Policy |

Please note that some of the third-party services we work with may process your data outside of the EU. In such cases, we ensure that appropriate safeguards are in place to protect your data in compliance with applicable privacy laws.

Your data will also be shares with members of your group within the FamiloApp.

https://terms.familo.net/

In order to improve our service, we use data generated while using the FamiloApp. This includes the following data points: app starts, session lengths, feature usage, IP address, mobile ad IDs, installation UUID, Android IDs, screen views, user properties (such as first launch or user gender), app crashes, and custom event parameters.

For tracking these data points, creating statistics and derive improvement analysis, we handover this data to the following third party services:

- Firebase
- Google Analytics

According to Art. 6(1)(f) of GDPR, we have a legitimate interest in collecting such statistical data, as it helps us improve the app and user experience, without overriding your rights and freedoms.

https://terms.familo.net/

19.     Defendant directly and/or indirectly intentionally instructs its customers to infringe the Patents-in-Suit through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at the above-identified resources or one or more of the following publicly-available resources: https://www.familo.net/index.html; https://www.familo.net/team-press.html;       https://familo.zendesk.com/hc/en-us;       https://familo.zendesk.com/hc/en-us/sections/360005875740-Map-and-location;       https://familo.zendesk.com/hc/en-us/sections/29044653318674-Exclusive-Materials;       https://familo.zendesk.com/hc/en-us/sections/360005912739-Account-and-profile;       https://familo.zendesk.com/hc/en-us/sections/360005911519-FAQ;    https://familo.zendesk.com/hc/en-us/sections/360005912299-Groups.

## COUNT I
### (Infringement of the '251 Patent)

20.     Paragraphs 1 through 19 are incorporated herein by reference as if fully set forth in their entireties.

21.     AGIS Software has not licensed or otherwise authorized Defendant to use and/or manufacture any Accused Products and/or products that embody the inventions of the '251 Patent.

22.     Defendant has and continues to directly infringe at least Claim 24 of the '251 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

23.     Defendant has and continues to indirectly infringe at least Claim 24 of the '251 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing

users of the Accused Products to perform methods claimed in the '251 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '251 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '251 Patent in violation of 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '251 Patent but remained willfully blind to the infringing nature of others' actions.

24.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 24 of the '251 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products of applications, products, and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby infringe at least Claim 24 of the '251 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the publicly-available resources identified herein. Defendant is thereby liable for infringement of the '251 Patent under 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '251 Patent but remained willfully blind to the infringing nature of others' actions.

25.    For example, Defendant directly infringes and/or indirectly infringes by a system comprising: a first device programmed to perform operations comprising: receiving a message from a second device, wherein the message relates to joining a group; based on receiving the message from the second device, participating in the group, wherein participating in the group includes sending first location information to a server and receiving second location information from the server, the first location information comprising a location of the first device, the second

location information comprising a plurality of locations of a respective plurality of second devices included in the group; presenting, via an interactive display of the first device, a first interactive, georeferenced map and a plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the second devices, and wherein the first georeferenced map includes data relating positions on the first georeferenced map to spatial coordinates; sending, from the first device to the server, a request for a second georeferenced map different from the first georeferenced map, wherein the request specifies a map location; receiving, from the server, the second georeferenced map, wherein the second georeferenced map includes the requested location and data relating positions on the second georeferenced map to spatial coordinates; presenting, via the interactive display of the first device, the second georeferenced map and the plurality of user-selectable symbols corresponding to the plurality of second devices, wherein the symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second devices; and identifying user interaction with the interactive display selecting one or more of the user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the one or more second devices via the server, wherein the first device does not have access to respective Internet Protocol addresses of the second devices.

26.    For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view other devices' and/or users' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow

devices and/or users to establish groups and to exchange messages via interaction with servers and relevant services; to allow devices and/or users to retrieve map information from multiple sources; to receive messages from other devices and/or users where those messages relate to joining groups; to facilitate participation in the group by communicating with a server and sending to and receiving location information; to present location information on interactive displays on the Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on the map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps by, for example, moving the map screen and/or by selecting different types of maps; and to permit interaction with the display where a device and/or user may select one or more symbols; and to permit data to be sent to other devices and/or users based on that interaction.

27. AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '251 Patent in an amount to be proved at trial.

28. AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '251 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## COUNT II
### (Infringement of the '838 Patent)

29. Paragraphs 1 through 19 are incorporated herein by reference as if fully set forth in their entireties.

30. AGIS Software has not licensed or otherwise authorized Defendant to make, use, offer for sale, sell, distribute, export from, or import any products that embody the inventions of the '838 Patent.

31.    Defendant has and continues to directly infringe at least Claim 54 of the '838 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

32.    Defendant has and continues to indirectly infringe at least Claim 54 of the '838 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '838 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '838 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally induce direct infringement of the '838 Patent.

33.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 54 of the '838 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products Application and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby directly infringe at least one claim of the '838 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the resources identified herein. Defendant is thereby liable for infringement of the '838 Patent under 35 U.S.C. § 271(b).

34.    For example, Defendant directly infringes and/or indirectly infringes by a system comprising: a first device programmed to perform operations comprising: joining a

communication network corresponding to a group, wherein joining the communication network comprises transmitting a message including an identifier corresponding to the group; participating in the group, wherein participating in the group includes sending first location information to a first server and receiving second location information from the first server, the first location information comprising a location of the first device, the second location information comprising one or more locations of one or more respective second devices included in the group; presenting, via an interactive display of the first device, a first interactive, georeferenced map and a first set of one or more user-selectable symbols corresponding to a first set of one or more of the second devices, wherein the first set of symbols are positioned on the first georeferenced map at respective positions corresponding to the locations of the first set of second devices, and wherein first georeferenced map data relate positions on the first georeferenced map to spatial coordinates; sending, to a second server, a request for second georeferenced map data different from the first georeferenced map data; receiving, from the second server, the second georeferenced map data; presenting, via the interactive display of the first device, a second georeferenced map and a second set of one or more user-selectable symbols corresponding to a second set of one or more of the second devices, wherein the second set of symbols are positioned on the second georeferenced map at respective positions corresponding to the locations of the second set of second devices, and wherein the second georeferenced map data relate positions on the second georeferenced map to spatial coordinates; and identifying user interaction with the interactive display selecting one or more of the second set of user-selectable symbols corresponding to one or more of the second devices and positioned on the second georeferenced map and user interaction with the display specifying an action and, based thereon, sending third data to the selected one or more second devices via the first server.

35.     For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view other devices' and/or users' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and other relevant services; to allow devices and/or users to retrieve map information from multiple sources, including different types of maps; to receive messages from other devices and/or users where those messages relate to joining groups; to facilitate participation in a group by communicating with a server and sending to and receiving location information; to present location information on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on a map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps by, for example, moving the map screen and/or by selecting satellite image maps; to permit interaction with the display where a device and/or user may select one or more symbols; and to permit data to be sent to other devices and/or users based on an interaction.

36.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '838 Patent in an amount to be proved at trial.

37.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '838 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## <u>COUNT III</u>
### (Infringement of the '123 Patent)

38.     Paragraphs 1 through 19 are incorporated herein by reference as if fully set forth in their entireties.

39.     AGIS Software has not licensed or otherwise authorized Defendant to use or manufacture any products that embody the inventions of the '123 Patent.

40.     Defendant has and continues to directly infringe at least Claim 23 of the '123 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

41.     Defendant has and continues to indirectly infringe at least Claim 23 of the '123 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '123 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '123 Patent at least as of the date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '123 Patent in violation of 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '123 Patent but remained willfully blind to the infringing nature of others' actions.

42.     For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 23 of the '123 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products of applications, products, and/or services, alone or in conjunction with additional Accused Products, in accordance with

Defendant's instructions and thereby infringe at least Claim 23 of the '123 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the publicly-available resources identified herein. Defendant is thereby liable for infringement of the '123 Patent under 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '123 Patent but remained willfully blind to the infringing nature of others' actions.

43.    Upon information and belief, Defendant directly infringes and/or indirectly infringes by a system comprising: a first device programmed to perform operations comprising: receiving a message sent by a second device, wherein the message relates to joining a group; based on receipt of the message sent by the second device, sending first location information to a first server and receiving second location information from the first server, the first location information comprising a location of the first device, the second location information comprising one or more locations of one or more respective second devices included in the group; sending, from the first device to a second server, a request for georeferenced map data; receiving, from the second server, the georeferenced map data; presenting, via an interactive display of the first device, a georeferenced map and one or more user-selectable symbols corresponding to one or more of the second devices, wherein the symbols are positioned on the georeferenced map at respective positions corresponding to the locations of the second devices represented by the symbols, and wherein the georeferenced map data relate positions on the georeferenced map to spatial coordinates; and identifying user interaction with the interactive display selecting a particular user-selectable symbol corresponding to a particular second device and user interaction with the display specifying an action and, based thereon, using an Internet Protocol to send data to the particular

second device, wherein identifying the user interaction selecting the particular user-selectable symbol comprises: detecting user selection of a portion of the interactive display corresponding to a position on the georeferenced map, and identifying the particular user-selectable symbol based, at least in part, on coordinates of the selected position, comprising: searching a set of symbols for a symbol located nearest to the coordinates of the selected position, wherein the set of symbols includes the user-selectable symbols corresponding to the second devices in the group, and wherein data associated with the set of symbols includes coordinates of portions of the display corresponding to the symbols in the set, and based on a result of searching the set of symbols, identifying the particular user-selectable symbol as the symbol located nearest to the coordinates of the selected position, wherein the particular user-selectable symbol corresponds to the particular second device.

44.    For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view others' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and other relevant services; to form and join groups by transmitting messages; to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information; to present location information on interactive displays on the Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on the map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting other types of maps; to permit

interaction with the display, where devices and/or users may select one or more symbols; and to permit data to be sent to other devices and/or users based on an interaction.

45.     AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '123 Patent in an amount to be proved at trial.

46.     AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '123 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

<u>COUNT IV</u>
**(Infringement of the '829 Patent)**

47.     Paragraphs 1 through 19 are incorporated herein by reference as if fully set forth in their entireties.

48.     AGIS Software has not licensed or otherwise authorized Defendant to make, use offer for sale, sell, distribute, export from, or import any products that embody the inventions of the '829 Patent.

49.     Defendant has and continues to directly infringe at least Claim 34 of the '829 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting form, and/or importing into the United States the Accused Products without authority and in violation of 35 U.S.C. § 271(a).

50.     Defendant has and continues to indirectly infringe at least Claim 34 of the '829 Patent by actively, knowingly, and intentionally inducing others to directly infringe, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, distributing, exporting from, and/or importing into the United States the Accused Products and by instructing users of the Accused Products to perform methods claimed in the '829 Patent. For example, Defendant, with knowledge that the Accused Products infringe the '829 Patent at least as of the

date of this Complaint, actively, knowingly, and intentionally induced, and continues to knowingly and intentionally induce direct infringement of the '829 Patent in violation of 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '829 Patent but remained willfully blind to the infringing nature of others' actions.

51.    For example, Defendant has indirectly infringed and continues to indirectly infringe at least Claim 34 of the '829 Patent in the United States because Defendant's customers use the Accused Products, including at least the Accused Products of applications, products, and/or services, alone or in conjunction with additional Accused Products, in accordance with Defendant's instructions and thereby infringe at least Claim 34 of the '829 Patent in violation of 35 U.S.C. § 271. Defendant directly and/or indirectly intentionally instructs its customers to infringe through training videos, demonstrations, brochures, installations, and/or user guides, such as those located at one or more of the publicly-available resources identified herein. Defendant is thereby liable for infringement of the '829 Patent under 35 U.S.C. § 271(b). Alternatively, Defendant believed there was a high probability that others would infringe the '829 Patent but remained willfully blind to the infringing nature of others' actions.

52.    For example, Defendant directly infringes and/or indirectly infringes by a system comprising: a second device programmed to perform operations comprising: receiving from a first device via a first server, a request to join a group, wherein the group includes the first device; sending, to the first server, an indication of acceptance of the request, wherein the first server is configured to join the first device to the group based on the acceptance of the request, and wherein joining the first device to the group comprises authorizing the first device to repeatedly share device location information and repeatedly engage in remote control operations with each device included in the group; sending a first message to the first server, wherein the first message

comprises data identifying the first device and a request for a first updated location of the first device, and wherein the first server is configured to send a second message to the first device based on and in response to receiving the first message from the second device, wherein the second message comprises a request for the first updated location of the first device; after sending the first message, receiving, from the first server, a response to the first message, the response including first location information comprising the first updated location of the first device; receiving from a second server, georeferenced map data; presenting, via a display of the second device, a georeferenced map based on the georeferenced map data and a symbol corresponding to the first device; wherein the symbol is positioned on the georeferenced map at a first position corresponding to the first updated location of the first device, and wherein the georeferenced map data relates positions on the georeferenced map to spatial coordinates; after receiving the first location information and the georeferenced map data, and after presenting the georeferenced map and the symbol positioned on the georeferenced map at the first position corresponding to the first updated location of the first device, receiving second location information comprising a second updated location of the first device from the first server, and using the server-provided georeferenced map data and the second location information to reposition the symbol on the georeferenced map at a second position corresponding to the second updated location of the first device; and identifying user interaction with the display specifying an action and, based thereon, sending, to the first server, a third message related to remotely controlling the first device to perform an action, wherein the first server is configured to send a fourth message to the first device based on receiving the third message from the second device, wherein the fourth message relates to remotely controlling the first device to perform the action, and wherein the first device is

configured to perform the action based on receiving the fourth message. For example, the Accused Products include features, as shown below.

53.    For example, on information and belief, and based on the publicly-available resources identified herein, the Accused Products are configured and/or programmed at least to allow devices and/or users to share their locations and view others' locations on a map and to communicate with those devices and/or users via the Accused Products; to allow devices and/or users to establish groups and to exchange messages via interaction with servers and other relevant services; to form and join groups by transmitting messages; to facilitate participation in the groups by communicating with one or more servers and sending to and receiving location information; to present location information on interactive displays on the exemplary Accused Products which include interactive maps and a plurality of user selectable symbols corresponding to other devices and/or users; to place symbols on the map at positions corresponding to the locations of the other devices and/or users; to permit devices and/or users to request and display additional maps from additional servers by, for example, moving the map screen and/or by selecting other types of maps; to permit interaction with the display, where a device and/or user may select one or more symbols; to permit data to be sent to other devices based on an interaction; and to cause an action by sending messages related to remote control.

54.    AGIS Software has suffered damages as a result of Defendant's direct and indirect infringement of the '829 Patent in an amount to be proved at trial.

55.    AGIS Software has suffered, and will continue to suffer, irreparable harm as a result of Defendant's infringement of the '829 Patent for which there is no adequate remedy at law unless Defendant's infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, AGIS Software prays for relief against Defendant as follows:

a.      Entry of judgment declaring that Defendant has directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit;

b.      Entry of judgment declaring that Defendant's infringement of the Patents-in-Suit has been willful and deliberate;

c.      An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the Patents-in-Suit;

d.      An order awarding damages sufficient to compensate AGIS Software for Defendant's infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with interest and costs;

e.      An order awarding AGIS Software treble damages under 35 U.S.C. § 284 as a result of Defendant's willful and deliberate infringement of the Patents-in-Suit;

f.      Entry of judgment declaring that this case is exceptional and awarding AGIS Software its costs and reasonable attorney fees under 35 U.S.C. § 285; and

g.      Such other and further relief as the Court deems just and proper.

Dated:  October 14, 2025                             Respectfully submitted,

                                                     _/s/ Alfred R. Fabricant_____
                                                     Alfred R. Fabricant
                                                     NY Bar No. 2219392
                                                     Email: ffabricant@fabricantllp.com
                                                     Peter Lambrianakos
                                                     NY Bar No. 2894392

Email:  plambrianakos@fabricantllp.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email:  vrubino@fabricantllp.com
**FABRICANT LLP**
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

Justin Kurt Truelove
Texas Bar No. 24013653
Email: kurt@truelovelawfirm.com
**TRUELOVE LAW FIRM, PLLC**
100 West Houston Street
Marshall, Texas 75670
Telephone: (903) 938-8321
Facsimile: (903) 215-8510

***ATTORNEYS FOR PLAINTIFF
AGIS SOFTWARE DEVELOPMENT LLC***